MICHAEL W. MALTER. #96533
ROBERT G. HARRIS, #124678
JULIE H. ROME-BANKS, #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
T: (408) 295-1700
F: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermalter.com

Proposed Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re | Case No.  21-50660-SLJ |
| GAIA INTERACTIVE, INC., | Chapter 11 |
| Debtor. | |

**DECLARATION OF JAMES CAO IN SUPPORT OF MOTION FOR INTERIM AND FINAL ORDERS APPROVING USE
OF CASH COLLATERAL**

I, James Cao, hereby declare:

1.      I am the President and CEO of Gaia Interactive, Inc., the Debtor and Debtor-in-Possession ("Debtor" or "Gaia") in the above referenced case.

2.      I have personal knowledge of the matters contained herein, except as to those matters alleged upon information and belief and as to those matters I believe them to be true.  If called upon as a witness, I could and would testify as follows.

3.      In my capacity as the President of Gaia, I have access to, and I am familiar with, the books and records kept by Gaia.  These books and records have been generated, recorded and compiled in the ordinary course of business of Gaia.  Further,

these documents were prepared at the time, or near the time, that the information was received or the events and transactions actually took place. It is the standard operating procedure of Gaia to preserve these documents in a place of safekeeping on its business premises. I have personal access to these books and records and their continued safekeeping is maintained under my direction and supervision.

4. I make this Declaration in support of the Motion by Gaia to interim and final orders permitting the use of cash collateral during this chapter 11 case pending confirmation of a plan of reorganization (the "Cash Collateral Motion" or the "Motion").

5. The Debtor filed a voluntary chapter 11 case on May 12, 2021 including an election to proceed under Subchapter V as a small business reorganization case. The Debtor is organized in the State of Delaware.

6. Gaia is an online social environment that allows for social networking, gaming and provides its subscribers with a virtual world with everything from artistically drawn digital characters to games, to art contests, to poetry forums and a digital marketplace. Users can play in games, chat, create their own digital characters and participate with millions of other users around the world. Although membership is free, many subscribers purchase higher level memberships in Gaia, as well as thousands of digital items to use in the virtual world created by Gaia. Gaia's financial difficulties began in 2020 as a result of the COVID-19 pandemic. Many of Gaia's subscribers are also comic artists whose income suffered greatly because of the shutdown of all comic conventions and shows around the world. With subscribers spending less on Gaia's services, Gaia found itself unable to pay many of its largest creditors. Gaia also was unable to develop new content in 2020 after all computer browsers stopped supporting Adobe Flash Player content and Gaia lacked sufficient funding to invest in the

development of new games.  Gaia was sued by senior secured creditor Cathay Bank which also obtained writs of attachment against Gaia's officers and directors James Cao and Derek Liu who personally guaranteed the debt of Cathay Bank.  Unable to reach an agreement to restructure that debt, Gaia along with its officers and directors James Cao and Derek Liu are all filing for protection under chapter 11.  After excluding the debts owed to Novel Animation, the 100% shareholder of Gaia, and other insiders, Gaia's total secured and unsecured debts are within the statutory cap to qualify for relief under Subchapter V, the Small Business Reorganization Act of Chapter 11.

7.      Prior to filing bankruptcy, in the ordinary course of business, the Debtor utilized revenues from its business operations and the proceeds of pre-petition loans to as the source of working capital for its business operations.  Pursuant to the Motion, the Debtor seeks authority to use the cash collateral of its senior secured creditor, Cathay Bank, to continue funding such operations pursuant to a budget (the "Budget").  The proposed Budget is attached hereto as Exhibit "A" and is incorporated herein by reference.

8.      The Debtor has been in default under the terms of its loan from Cathay Bank for several months and Cathay Bank commenced aggressive collection actions against the Debtor and the Debtor's two officers, myself and Derek Liu, each of whom personally guaranteed the loan of Cathay Bank on the Debtor's behalf, including obtaining and recording writs of attachment and garnishment of at least one bank account of Mr. Liu for purposes of creating a lien of attachment.  Cathay Bank asserts a perfected security interest in substantially all of the Debtor's assets, including its general intangibles, inventory and equipment.  As set forth in the Budget, the Debtor anticipates that it will receive cash during this Chapter 11 case from its online subscribers through

sales of subscriptions, memberships and other online sales including inventory sales (the "Cash Collateral") and by this Motion seeks authority to use Cash Collateral to fund operations and thereby maintain the going concern value of its business and reorganize.

9.     While the Debtor anticipates negotiations with Cathay Bank, as of the date of the filing of this Motion no stipulation has been reached and Cathay Bank has not consented to the use of its Cash Collateral. The Debtor therefore requests entry of an order or orders (a) approving the use of approximately $99,300 of Cash Collateral for normal operating expenses for the next 3 weeks pending a final hearing on this Motion, (b) approving the payment of weekly adequate protection to Cathay Bank of $3,750.00, (c) granting a replacement lien as described in greater detail below to Cathay Bank on account of the use of Cash Collateral to prevent a diminution of pre-petition collateral that secures the obligations owed to Cathay Bank, (d) scheduling a final hearing on this Motion and (e) at that final hearing approve the use of Cash Collateral through the confirmation of a chapter 11 plan of reorganization in this case, or to such other date that the Debtor and Cathay Bank may agree.

10.    Although the Debtor has other secured creditors with blanket liens, those parties are junior in priority to Cathay Bank.  Due to the liquidation value of the Debtor's assets, secured creditor Gary Schofield is wholly unsecured.  In addition as described in greater detail, three additional junior secured creditors (Credibility Capital, Inc., BlueVine Capital, Inc. and the U.S. Small Business Administration) failed to properly perfect their security interest in the Debtor's assets as a result of filing their UCC-1 Financing Statements in the wrong state.

11.    In addition, due to the amount of secured pre-petition debts, the Debtor is not able to obtain unsecured credit allowable under Section 503)(b)(1) as an expense of

Case: 21-50660   Doc# 6-1   Filed: 05/12/21   Entered: 05/12/21 18:49:38   Page 4 of 11

administration to provide post-petition financing for the Debtor's operations. Pre-petition the Debtor had obtained high interest unsecured loans through its officers, including a loan from LoanMe. However the Debtor's officers are no longer able to provide such unsecured credit and are also filing personal chapter 11 petitions concurrently with the Debtor.

12.    A true and correct copy of the Cathay Bank promissory note, security agreement and UCC-1 Financing Statement are attached hereto as Exhibits "B" through "D" respectively and are incorporated herein by reference.

13.    The Debtor requests interim approval for use of Cash Collateral in the amounts of and for the purposes described under the line items and time periods set forth in the Budget to the extent necessary to prevent immediate and irreparable harm to the Estate, pending a final hearing on this Motion. Thereafter, the Debtor proposes to continue to use Cash Collateral as described in the Budget. In both situations, the Debtor requests authority to (a) exceed and pay any expense line item by 20% provided that it does not exceed the aggregate budgeted expenditures for any period by more than 10%, and (b) carry over unused funds budgeted in any period for use in future periods.

14.    Due to the lack of an equity cushion to protect Cathay Bank, the Debtor proposes to pay a weekly adequate protection payment to Cathay Bank as well as granting Cathay Bank a replacement lien (the "Replacement Lien") as security for any decrease in the value of the property securing Cathay Bank's prepetition claim resulting from the use of Cash Collateral by the Debtor, the Debtor be allowed to grant to the Cathay Bank a Replacement Lien on all property of the Debtor acquired after the commencement of this case of the same types and description as the collateral securing Cathay Bank's prepetition lien, if any, but excluding claims for relief arising under the

1  Bankruptcy Code (including claims arising under §§ 506(c), 544, 545, 547, 548, and 549

2  thereof).

3       15.     Such Replacement Lien shall have the same priority, validity and extent as

4  Cathay Bank's prepetition lien, but shall be subordinate to the (i) compensation and

5  expense reimbursement (other than for professional fees and expenses) allowed to a

6  Trustee in any successor Chapter 7 case; (ii) fees payable to the U.S. Trustee pursuant

7  to 28 U.S.C. § 1930(a)(6); and (iii) the fees of the Debtor's professionals in this case.

8       16.     Gaia's debt structure is as follows. Cathay Bank is the secured creditor

9  with a first priority perfected blanket security interest in the Debtor's assets. The following

10  chart set forth the respective lien interests of Cathay Bank and the other secured

11  creditors of the Debtor as of the petition date:

| Lien Priority | Creditor | Amount Owed | Security Interest |
|---|---|---|---|
| 1. | Cathay Bank | $1,720,000.00[1] | Blanket lien perfected in Delaware 1-17-2018. |
| 2. | Gary Schofield as Agent of former shareholders of Debtor | $1,744,622.62 | Blanket lien perfected in Delaware 6-27-2018. |
| 3. | Credibility Capital | $27,578.66 $25,485.93 $75,154.95 | Blanket lien perfected in California 10-24-19 following last loan increase. Due to perfecting in wrong state, Debtor has listed the claims of this creditor as disputed. |
| 4. | BlueVine Capital Inc. | $67,146.00 | Blanket lien perfected in California 1-22-2020 by agent First Corporate Solutions. |

---

[1] The current loan balance owed to Cathay Bank per an online statement I obtained on May 12, 2021 is $1,320,977.61. In negotiations with Cathay Bank pre-petition, the Debtor was informed that the total including accrued default interest and fees is approximately $1,720,000. The Debtor is using that higher balance in an abundance of caution, but has not received an accounting from Cathay Bank. The contract interest rate owed to Cathay Bank is 4.5% based on the Wall Street Journal prime interest rate of 3.25% plus 1.25% per the promissory note.

| Lien Priority | Creditor | Amount Owed | Security Interest |
|---|---|---|---|
| | (aka Celtic Bank) | | Due to perfecting in wrong state, Debtor has listed the claim of this creditor as disputed. |
| 5. | U.S. Small Business Administration (EIDL) | $500,000.00 | Blanket lien perfected in California 5-5-2020. Due to perfecting in wrong state, Debtor has listed the claim of this creditor as disputed. |

17.     In addition, there are two creditors who were previously secured by the Debtor's assets.  Although those loans were paid off, the creditors have failed to release their UCC-1 Financing Statements.  Those two creditors are:

| Creditor | Date Loan Repaid or Confirmation of Repayment | Security Interest |
|---|---|---|
| American Express National Bank | Debtor has letter confirming debt was repaid dated 8-20-2019. | Blanket lien perfected in Delaware 8-15-2018 was never released. . |
| CHTD Company | Termination statement delivered to Debtor on 4-27-2021, but filing status not yet updated in Delaware. | Blanket lien perfected in Delaware 4-19-2018. |

18.     Finally, Gaia owes unsecured debt consisting of priority tax claims of approximately $4,000 and unsecured non-priority claims of approximately $4.038 million of which $3.197 million is owed to its sole shareholder, Novel Animation, Inc. and $333,500 is owed to its officers for personal loans made to the Debtor.  Approximately $500,000 is owed on non-insider unsecured claims.

19.     The Debtor's primary assets consist of its intellectual property, specifically its domain names and trademarks, which collectively are valued on a liquidation basis at $45,000.  The Debtor also has a small physical inventory of goods of approximately $17,700 which it sells through its websites. Gaia's office equipment and computers have a value of approximately $20,500 but have been fully depreciated..  Much of the content

work for the websites has been developed by outside consultants. Gaia had cash in its bank account at Silicon Valley Bank of $34,809 on the petition date, all of which is the cash collateral of secured creditor Cathay Bank. The only other assets of value are a security deposit with its landlord of $6,000 and tax credits which can only be used Gaia and have no value on liquidation.

20. The Debtor's revenues are derived from the subscription agreements that it sells through its websites. Online customers use a third-party application such as PayPal or Braintree to facilitate the purchase of their membership, subscription or other online purchases of digital items and tokens from the Debtor. Memberships and subscriptions are sold for 1 year at a time. However, the Debtor only receives the resulting income on a monthly basis from the third-party payment providers. Accordingly, although the Debtor's income is fairly consistent and predictable, due to the declines described above the Debtor has not generated sufficient net profit after payment of cost of goods, including payroll and other critical expenses, to be able to manage its secured loan payments without receiving personal loans arranged by its two officers. As a result, the Debtor will need to use cash collateral to permit the orderly continuation of the operation of its business and to maintain business relationships with and pay employees, vendors, to maintain its intellectual property, and to satisfy other working capital needs.

21. With the assistance of its recently employed financial advisor, BPM, LLP, the Debtor has prepared the operating Budget reflecting the anticipated receipt of revenues and operating expenses of the Debtor during the first 13 weeks of its Chapter 11 case. The Budget assumes that the Debtor will be able to use cash collateral consisting of proceeds of from the remittance of memberships, subscriptions and other online sales, as well as available cash on hand, during the first 13 weeks. The Budget is

attached hereto as Exhibit "A" and incorporated by this reference herein. The Debtor does expect to propose a budget of longer duration after it has had the opportunity to try to negotiate the ongoing use of cash collateral with creditors Cathay Bank and Gary Schofield, who are the only creditors who properly perfected their security interest in the Debtor's assets[2].

22. As set forth in the Budget, the Debtor anticipates that it will require up to $99,930 for the funding of necessary expenses during the first three (3) weeks following the Petition Date. The critical expenses to be paid include web hosting services, other critical online services, consultant expenses, payroll and associated taxes and insurance all as set forth in the Budget. The Debtor proposes during these same 3 weeks to pay Cathay Bank a weekly adequate protection payment of $3,750.00. The Debtor requires constant web hosting of its websites in order to deliver content to its subscribers. The Debtor's employees and consultants are needed to fulfill ongoing maintenance of the websites to ensure that they run smoothly. Failure to meet these financial commitments would result in the shutdown of the Debtor's websites, cancellation of subscriptions and eliminate all revenues.

---

[2] The remaining secured creditors Credibility Capital, Inc., BlueVine Capital, Inc. and the U.S. Small Business Administration each failed to properly perfect their security interests in the Debtor's assets due to filing their UCC-1 Financing Statements in the State of California. The Debtor is a registered Delaware corporation and is also publicly registered with the California Secretary of State as a Delaware corporation. Pursuant to Delaware Commercial Code §9-307(e), the location for perfecting a security interest of a registered organization organized under the law of that state is in that state, i.e. Delaware. If necessary, the Debtor will bring an adversary proceeding to avoid those liens due to the failure of those creditors to properly perfect their respective security interests. Because their liens are avoidable as being unperfected and because their liens are junior in priority to Cathay Bank and Gary Schofield, these secured creditors are wholly unsecured and not entitled to payment of adequate protection.

Case: 21-50660   Doc# 6-1   Filed: 05/12/21   Entered: 05/12/21 18:49:38   Page 9 of 11

23.     In addition to a weekly adequate protection payment, the Debtor also proposes to grant to Cathay Bank a replacement lien (the "Replacement Lien") on all property of the Debtor acquired after the commencement of this case of the same types and description as the collateral securing Cathay Bank's prepetition lien, if any, but excluding claims for relief arising under the Bankruptcy Code including §§506(c), 544, 545, 548, 548 and 549.  Such Replacement Lien shall have the same priority, validity and extent as Cathay Bank's prepetition lien, but shall be subordinate to the (i) compensation and expense reimbursement (other than for professional fees and expenses) allowed to a Trustee in any successor Chapter 7 case; (ii) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (iii) the fees of the Debtor's professionals in this case.

24.     The Replacement Lien shall be perfected by operation of law upon entry of the orders by the Bankruptcy Court. Cathay Bank may but shall not be required to file or record any financing statements or other documents in any jurisdiction or to take any other action in order to validate or perfect the Replacement Lien granted hereunder. The Court's orders shall be deemed sufficient and conclusive evidence of the security interest and liens granted herein. If Cathay Bank shall, in its sole discretion, choose to file financing statements or other documents, or otherwise confirm perfection of such security interests and liens, Cathay Bank shall be authorized to effect such filings and all such financing statements or similar documents shall be deemed to have been filed, recorded, or made on the date of entry of the orders granting such Replacement Lien.

25.     As additional adequate protection to Cathay Bank, the Debtor is also agreeable to reasonable reporting requirements.

Case: 21-50660     Doc# 6-1     Filed: 05/12/21     Entered: 05/12/21 18:49:38     Page 10 of 11

1        Executed on  May 12, 2021 at Santa Clara County, California.  I declare under

2 penalty of perjury that the foregoing is true and correct.

3

4                                    /s/ James Cao

5                                    James Cao